UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MICHAEL A. STEINMETZ

                Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

No. 2:15-cv-0006-FVS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

        BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 12, 14.)
Attorney Dana C. Madsen represents plaintiff; Special Assistant United States Attorney Jeffrey E.
Staples represents defendant. After reviewing the administrative record and briefs filed by the
parties, the court **GRANTS** defendant's Motion for Summary Judgment (**ECF No. 14**) and
**DENIES** plaintiff's Motion for Summary Judgment (**ECF No. 12**.).

## JURISDICTION

        Plaintiff Michael A. Steinmetz (plaintiff) protectively filed for supplemental security
income (SSI) and disability insurance benefits (DIB) on August 17, 2011. (Tr. 174, 177, 189.)
Plaintiff alleged an onset date of October 1, 2001. (Tr. 174, 177, 189.) Benefits were denied
initially and on reconsideration. (Tr. 123, 126, 136, 138.) Plaintiff requested a hearing before an
administrative law judge (ALJ), which was held before ALJ Marie Palachuk on May 2, 2013. (Tr.
33-70.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 46-63, 68-69.)
Medical expert Stephen Rubin, Ph.D., and vocational expert Sharon Welter also testified. (Tr. 35-
46, 63-68.) The ALJ denied benefits (Tr. 14-27) and the Appeals Council denied review. (Tr. 1.)
The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was 36 years old at the time of the hearing. (Tr. 47.) He went to school through the tenth grade and later got a GED. (Tr. 48.) He has various work experience in food service. He also worked in manufacturing. (Tr. 48-50.) He stopped working because anxiety overwhelmed him. (Tr. 48-49.) He still has a lot of anxiety. (Tr. 50-51.) His stomach tightens, his palms get sweaty, he gets weak in the knees, he gets wheezy, and he cannot breathe. (Tr. 51.) His anxiety gets worse when he is away from home. (Tr. 51.) Plaintiff testified he cannot go to a store for grocery shopping or to family parties due to anxiety. (Tr. 52.) He only leaves his house for appointments. (Tr. 52.) He also has lower back pain. (Tr. 52.) The pain shoots down his right side into his leg and foot. (Tr. 54.) He has a history of drug use but testified he has been narcotics-free for 11 years. (Tr. 60.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance.

*McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments

are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since October 1, 2001, the alleged onset date. (Tr. 16.) At step two, the ALJ found plaintiff has the following severe impairments: possible cognitive disorder, adjustment disorder, generalized anxiety disorder, personality disorder, substance abuse, pedophilia, and degenerative disc disease of the lumbar spine. (Tr. 16.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 17.) The ALJ then determined:

> [C]laimant has the physical residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can occasionally climb ladders,

ropes or scaffolds. He can frequently handle or finger with the right upper extremity. He should avoid concentrated exposure to industrial noise and hazards. He can understand, remember and carry out simple, repetitive tasks and well learned complex repetitive tasks. He is able to maintain attention and concentration for two-hour intervals between regularly scheduled breaks and to complete a full time workday and workweek. He can have seldom changes in work routine. He should not do production rate of pace work. He can have occasional, superficial interactions with the public, coworkers and supervisors. He should deal with things rather than people. He would need additional time (defined as 10 percent or more than the average employee) to adapt to changes in the work routine.

(Tr. 18-19.) At step four, the ALJ found plaintiff is unable to perform any past relevant work. (Tr. 26.) After considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 26.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from October 1, 2001, through the date of the decision. (Tr. 27.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) erred in evaluating the medical evidence; and (2) did not include all of plaintiff's limitations in the residual functional capacity determination. (ECF No. 12 at 13-20.) Defendant argues substantial evidence supports the ALJ's evaluation of the medical opinion evidence. (ECF No. 14 at 3-21.)

**DISCUSSION**

Plaintiff argues the ALJ erred in evaluating the medical evidence and that additional limitations should have been included in the RFC finding.[1] (ECF No. 12 at 13-18.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons

---

[1] Plaintiff frames the ALJ's evaluation of the medical opinion evidence and the application of that evidence to the RFC as different issues. (ECF No. 12 at 13.) However, the issues raised by plaintiff all involve evaluation of the medical evidence and therefore the ALJ's consideration of each medical opinion challenged by plaintiff is addressed individually.

that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

Similarly, the opinion of an "acceptable medical source" such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners, physicians' assistants, therapists, teachers, social workers, spouses and other non-medical sources. 20 C.F.R. §§ 404.1513(d), 416.913(d). However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.

**1.    Kevin Shearer MA, CRC**

Plaintiff argues the ALJ erroneously gave "little weight" to the opinion of Kevin Shearer, MA, CRC. (ECF No. 12 at 14-15.) In March 2009, Mr. Shearer completed a Washington State Department of Social and Health Services (DSHS) Psychological/Psychiatric Evaluation form.[2]

---

[2] Plaintiff asserts the DSHS form completed by Mr. Shearer is also the opinion of Frank Rosekrans, Ph.D., and therefore may only be rejected by the ALJ with specific, legitimate reasons supported by substantial evidence. (ECF No. 12 at 14, ECF No. 15 at 2.) Dr. Rosekrans signed the form as a "releasing authority." (Tr. 289.) There is no evidence that Mr. Shearer was working closely with and under the supervision of Dr. Rosekrans. As a result, the opinion is properly weighted as that

(Tr. 286-89.) Mr. Shearer listed diagnoses of adjustment disorder with mixed anxiety and depressed mood; and antisocial personality disorder with borderline features. (Tr. 287.) Mr. Shearer assessed no cognitive limitations but assessed one moderate and three marked social limitations. (Tr. 288.) The ALJ gave little weight to Mr. Shearer's opinion. (Tr. 24.)

The first reason cited by the ALJ for rejecting Mr. Shearer's opinion is that Mr. Shearer provided no explanation of the evidence relied on in forming the opinion. (Tr. 24.) A medical opinion may be rejected if it is unsupported by medical findings. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Mr. Shearer did not include any written explanation for his assessment on the DSHS form, but wrote "See narrative" in the space provided for describing the basis for the assessed functional limitations. (Tr. 288-89.) However, there is no supporting narrative or explanation for Mr. Shearer's conclusions in the record. As a result, the opinion is not adequately supported by medical findings or explanation. This is therefore a germane reason for rejecting the opinion.

Plaintiff argues the ALJ had a duty to develop the record with regard to the explanatory narrative referenced by Mr. Shearer. (ECF No. 12 at 15.) In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are

_____

of an "other source" rather than an acceptable medical source and may be rejected by the ALJ for germane reasons. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011). Notwithstanding, the germane reasons properly cited by the ALJ for rejecting Mr. Shearer's opinion also meet the standard of specific, legitimate reasons supported by substantial evidence.

considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that if the evidence is insufficient or inconclusive regarding the disability determination, the ALJ may attempt to obtain additional evidence. 20 C.F.R. §404.1520b; *see also* 20 C.F.R. §§404.1519a. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998).

In this case, the ALJ asked plaintiff's counsel at the hearing, "Are we missing any documents that are material to your case?" Counsel responded, "No, none." (Tr. 34.) Furthermore, after reading the reasoning for the ALJ's decision, plaintiff had ample time to supplement the record for the Appeals Council or this court with a narrative from Mr. Shearer made contemporaneously with the opinion on the DSHS form, yet no such evidence was submitted. Although the ALJ has a duty to develop the record in certain situations, it is plaintiff's burden to produce evidence to establish disability. 20 C.F.R. § 404.1512(a). The ALJ identified sufficient evidence in the record as a whole for a properly supported disability determination and as such there is no ambiguity to be resolved. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). As a result, the ALJ's duty to develop the record was not triggered and the ALJ reasonably determined Mr. Shearer's findings were not properly supported.

The second reason given by the ALJ in assigning little weight to the opinion is that DSHS rules governing the definition and assessment of disability differ from those of the Social Security Administration. (Tr. 24.) The regulations provide that the amount of an acceptable medical source's knowledge of Social Security disability programs and their evidentiary requirements may

be considered in evaluating an opinion, regardless of the source of that understanding. 20 C.F.R. § 404.1527. Nonetheless, the regulations also require that every medical opinion will be evaluated, regardless of its source. 20 C.F.R. 404.1527(c) and 416.927(c). Although state agency disability rules may differ from Social Security Administration rules regarding disability, it is not always apparent that the differences in rules affect a particular physician's report without further analysis by the ALJ.[3] There may be situations where less weight should be assigned to a DSHS medical

---

[3] In *Fleming v. Astrue*, cited by defendant, the district court determined with no discussion that "the ALJ properly considered the differences between the DSHS regulations and the social security regulations and how those differences impact the basis for [the medical] opinions." 2013 WL 4759065 at *3 (E.D. Wash. Sept. 4, 2013). In *Henderson v. Astrue*, cited by plaintiff, the district court concluded the ALJ improperly determined that a decision by any other governmental agency about whether a claimant is disabled is based on its rules and is not the decision of the Social Security Administration. 634 F. Supp. 2d 1182, 1191-92 (E.D. Wash. 2009). However, as defendant points out, the *Henderson* court also found that the ALJ properly considered the difference between DSHS definitions for degrees of limitation and Social Security definitions, noting the DSHS definitions were included on the DSHS forms. *Id.* at 1192. In a third case not cited by the parties, the court found the ALJ properly considered differences between DSHS definitions and Social Security definitions regarding the degrees of limitations, but in that case the DSHS definitions were also printed on the form completed by the medical professional. *Martin v. Astrue*, 2011 WL 3626771 at *10 (E.D. Wash. Aug. 17, 2011). On the form completed by Mr. Shearer, definitions for the terms regarding severity of functional limitations are not included. (Tr. 288.)

opinion based on the differences in rules, but substantial evidence does not support that finding here. This is therefore not a germane reason for rejecting DSHS medical reports. However, because the ALJ cited other germane reasons supported by substantial evidence which justify rejecting Mr. Shearer's opinion, there is no error. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

The third reason mentioned by the ALJ is that the evaluation "appears largely based on the claimant's self-reported symptoms and complaints, which are not fully credible." (Tr. 24.) A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595 (9th Cir. 1999); *Fair*, 885 F.2d at 604. The ALJ found plaintiff less than fully credible, and plaintiff has not challenged that finding. (Tr. 19.) As a result, to the extent Mr. Shearer's findings are based on plaintiff's self-report, the reason is germane to the opinion and the ALJ did not err.

Next, the ALJ pointed out that plaintiff "was likely aware that the continuation of his state assistance was dependent upon the DSHS evaluation, and he therefore had incentive to overstate his symptoms and complaints." (Tr. 24.) Evidence of motivation to obtain social security benefits may be considered in the credibility determination. *See Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 795 F.3d 1177, 1186 (9th Cir. 2015). Indeed, the ALJ found plaintiff less than fully credible. (Tr. 23-24.) Plaintiff cites a non-binding authority for the proposition that the purpose for which the report was obtained does not provide a legitimate basis for rejecting the opinion. (ECF No. 12 at 15, *citing Henderson v. Astrue*, 634 F.Supp. 2d 1182, 1191-92 (E.D. Wash, 2009).) However, *Reddick v. Chater* suggests the purpose

for which the report was created may be considered when there is other evidence undermining the credibility of the report. 157 F.3d 715, 726 (9th Cir. 1998). The ALJ reasonably pointed out factors undermining Mr. Shearer's opinion. As a result, this reasoning is germane to Mr. Shearer's report.

Lastly, the ALJ rejected the opinion because the form was completed by checking boxes and contains few objective findings in support of the degree of limitation opined. (Tr. 24.) Individual medical opinions are preferred over check-box reports. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983). This is a specific, legitimate reason for rejecting an opinion where there is no explanation provided for the opinion. As discussed *supra*, there is no written narrative explaining the basis of Mr. Shearer's opinion and as a result, this reasoning is supported by substantial evidence. Because the ALJ cited several germane reasons supported by substantial evidence which reasonably justify the weight assigned to Mr. Shearer's opinion, the ALJ did not err.

**2.    Dr. Dalley**

Plaintiff argues the ALJ improperly rejected limitations from one of Dr. Dalley's psychological opinions. (ECF No. 12 at 15, 18.) Dr. Dalley examined plaintiff and completed DSHS Psychological/Psychiatric Evaluation forms in December 2009, July 2010, January 2012, and December 2012. (Tr. 290-307, 336-41, 349-55.) The ALJ gave some weight to the July 2010, January 2012 and December 2012 opinions, but gave little weight to Dr. Dalley's December 2009 opinion. (Tr. 24-25.)

In December 2009, Dr. Dalley diagnosed adjustment disorder with mixed anxiety and depression; panic disorder with agoraphobia; social phobia; polysubstance dependence and antisocial personality disorder. (Tr. 292.) He assessed one severe, two marked, and two moderate limitations. (293.) Dr. Dalley's findings were supported by a narrative addendum detailing

interview notes and objective test results. (Tr. 296-98.) The ALJ gave little weight to the opinion for two reasons. (Tr. 24.)

First, the ALJ pointed out the reliability of the assessment is questionable because plaintiff was not forthcoming about his substance use. (Tr. 24.) Opinion evidence may be discounted based on drug or alcohol use affecting the opinion. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999); *Andrew v Shalala*, 53 F.3d 1035, 1042-43 (1993). Dr. Dalley noted plaintiff had an extensive history of multiple substance abuse, but reported last use of alcohol or illicit substances in 2002, seven years before the evaluation and just before a seven-year prison term. (Tr. 292, 296.) Plaintiff also reported to Dr. Dalley he had not used illicit substances or alcohol since his release from prison in March 2009. (Tr. 292, 296.) However, the ALJ pointed out several inconsistencies in the substance use evidence and determined plaintiff's statements regarding substance use were unreliable. (Tr. 23-24.) In particular, plaintiff reported to Dr. Dalley during his second examination in July 2010 that he had failed a urinalysis in October 2009 for marijuana[4] (Tr. 305), not long before his appointment with Dr. Dalley that December. Thus, plaintiff had used marijuana on at least one occasion before Dr. Dalley's December 2009 assessment, despite reporting to Dr. Dalley no alcohol or substance use. Thus, the ALJ reasonably concluded Dr. Dalley's 2009 report was based on inaccurate information and was therefore less reliable.

The second reason given for the ALJ's assignment of little weight to Dr. Dalley's 2009 opinion is "the DSHS limitation factors . . . need to be considered." (Tr. 24.) Presumably, the ALJ intended to reference the difference between DSHS disability rules and Social Security disability

---

[4] Plaintiff also reported having failed a drug test in June 2010. (Tr. 305.)

rules, although the ALJ's exact meaning and how the "DSHS limitation factors" were considered is unclear. As discussed *supra*, while differences in rules may sometimes be an issue affecting the weight given to a decision, it is not a legitimate or reasonable basis for rejecting the opinion without further explanation. Furthermore, the ALJ gave weight to Dr. Dalley's other reports despite the "DSHS limitation factors." (Tr.24.) The ALJ made no distinction between the application of the DSHS rules to the various reports that were given weight or rejected; therefore this is not a specific, legitimate reason for rejecting the 2009 opinion. Notwithstanding, the ALJ's other specific, legitimate reason for rejecting the opinion was supported by substantial evidence and this error is therefore harmless. *See e.g., Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). As a result, the ALJ properly rejected the 2009 opinion.

### 3.    Dr. Pollack

Plaintiff argues the ALJ improperly weighted the opinion of Dr. Pollack. (ECF No. 12 at 16.) In October 2011, Dr. Pollack examined plaintiff and prepared a narrative psychological evaluation. (Tr. 317-23.) Dr. Pollack diagnosed cognitive disorder NOS; attention deficit/hyperactivity disorder by history; pedophilia; and polysubstance dependence in remission. (Tr. 323.) The report described results of objective psychological testing and the clinical interview. (Tr. 317-23.) The ALJ gave little weight to the opinion. (Tr. 24.)

The first reason given by the ALJ for rejecting Dr. Pollack's opinion is that the reliability of the assessment is questionable because plaintiff was not forthcoming about his substance use. (Tr. 24.) Plaintiff told Dr. Pollack he had a long history of drug abuse but stopped in 2002. (Tr. 320.) As discussed, *supra*, plaintiff had failed two urinalysis tests for marijuana by the time of Dr. Pollack's evaluation. (Tr. 305.) Other inconsistencies in the record regarding drug and alcohol use suggest that to the extent Dr. Pollack's findings were based on plaintiff's statement that he had

been substance-free since 2002, those findings may not have been accurate. (Tr. 305, 320.) As a result, this is a specific, legitimate reason for assigning less weight to the opinion.

The second reason mentioned by the ALJ in rejecting the opinion is the opinion does not specifically describe plaintiff's level of functioning. (Tr. 24.) Although Dr. Pollack provided objective test results, he drew virtually no conclusions about plaintiff's work-related functioning. (Tr. 317-23.) The most analytical statement of objective test results in the opinion noted: "The results of the mental status examination revealed good attention and concentration. His general fund of knowledge is poor. His basic mathematics abilities are acceptable. His knowledge of current events is poor. His abstract skills are poor. His social judgment is acceptable." (Tr. 322.) The RFC finding provides plaintiff "is able to maintain attention and concentration for two-hour intervals" and "can have occasional, superficial interactions with the public, coworkers and supervisors. He should deal with things rather than people." (Tr. 18-19.) The RFC finding includes limitations greater than those indicated by Dr. Pollack's findings of "good attention and concentration" and "social judgment is acceptable." (Tr. 322.) Plaintiff does not identify any other limitations assessed by Dr. Pollack or argue that crediting the opinion creates evidence further limiting plaintiff's residual functional capacity. The ALJ reasonably interpreted Dr. Pollack's report as providing virtually no functional assessment information and this is a specific, legitimate reason supported by substantial evidence for giving less weight to the opinion.

The third reason cited by the ALJ is that Dr. Pollack diagnosed cognitive disorder and attention deficit hyperactivity disorder without appropriate testing. (Tr. 24-25.) First, Dr. Pollack noted that the basis for the ADHD diagnosis is "by history," suggesting Dr. Pollack was aware there was little objective evidence of the condition and the diagnosis was based on self report or other records. (Tr. 323.) Second, it is not clear what basis the ALJ has for concluding that

"appropriate testing" was not done for the diagnosis of cognitive disorder NOS. It is improper for the ALJ to act as his own medical expert. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Further, an ALJ must not substitute his medical judgment for a doctor's. *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). Dr. Pollack noted poor verbal performance and poor judgment based on results from the mental status exam, the Wechsler Adult intelligence Scale-IV, the Wechsler Memory Scale-III, and Trail Making Test. (Tr. 321-22.) This is consistent with the testimony of the medical expert, Dr. Rubin, that plaintiff has a diagnosis of cognitive disorder based on panic disorder and uneven intellectual abilities. (Tr. 41-42.) Additionally, the ALJ's step two finding includes "possible cognitive disorder"[5] indicating that the ALJ at least partially accepted the diagnosis. (Tr. 16.) The evidentiary basis for the ALJ's rejection of Dr. Pollack's diagnosis of cognitive disorder for lack of proper testing is unclear. As a result, the ALJ's third reason for rejecting Dr. Pollack's report is not supported by substantial evidence. This is harmless error, however, because the ALJ cited other legally sufficient reasons for rejecting the opinion. *See, e.g., Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).

---

[5] The ALJ noted at step two that the finding of a severe impairment of cognitive disorder was designated as "possible" for the same reasons Dr. Pollack's opinion was rejected. (Tr. 17.) The ALJ did not discuss the testimony of the medical expert Dr. Rubin, who testified there is evidence diagnosis of cognitive disorder in the record, in detail or otherwise explain how the record supports the ALJ's sole determination that the diagnosis of cognitive disorder is only "possible." Nonetheless, plaintiff makes no argument that additional limitations resulting from cognitive disorder should have been included in the RFC (and the court finds no evidence justifying such additional limitations), whether or not there is a well-supported diagnosis of cognitive disorder.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

Plaintiff argues the GAF score of 50 assessed by Dr. Pollack should have been given more weight.[6] However, the GAF score is of little relevance in social security proceedings because clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). Further, the Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Moreover, the GAF scale is no longer included in the DSM–V.[7] As a result, the ALJ did not err by rejecting the GAF score.

The ALJ cited specific, legitimate reasons supported by substantial evidence which reasonably justify rejecting Dr. Pollack's opinion. Even if the opinion should not have been rejected, Dr. Pollack's report does not support any additional limitations in the residual functional capacity finding. As a result, there is no error.

---

[6]A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

[7] "It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5TH Ed. at 16.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

**4.    Dr. Rubin**

Plaintiff argues the ALJ should have assigned more weight to the opinion of Dr. Rubin, the medical expert. (ECF No. 12 at 16.) Dr. Rubin testified the record supports diagnoses of cognitive disorder, affective disorder, anxiety-related disorder, personality disorder, and substance addiction disorder. (Tr. 41-42.) He opined plaintiff has a number of mild to moderate limitations. (Tr. 44-45.) The ALJ assigned "some weight" to Dr. Rubin's opinion because he had the benefit of reviewing the entire record. (Tr. 25-26.) However, the ALJ pointed out Dr. Rubin "accepted the questionable diagnosis of cognitive disorder" and "did not really address or discuss the multiple findings suggesting the claimant engaged in malingering." (Tr. 26.)

Plaintiff argues Dr. Rubin's opinion about limitations is entitled to more weight and points out the ALJ had the opportunity to ask Dr. Rubin about cognitive disorder and malingering during his testimony. (ECF No. 16 at 12.) The court agrees that the ALJ should not reject Dr. Rubin's opinion because he failed to address questions not asked by the ALJ. However, as discussed, *supra*, the cognitive disorder diagnosis is not associated with any additional limitations. It is likewise unlikely that testimony about the evidence of malingering in the record would result in additional limitations. As a result, to the extent this reasoning is erroneous, the error is harmless. *See Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r Soc. Sec. Admin*, 359 F.3d 1190, 1195-97 (9th Cir. 2004).

Plaintiff also suggests the ALJ should have included "Dr. Rubin's opinion regarding Mr. Steinmetz's pace" in the RFC and asserts the vocational expert testified plaintiff would be unemployable with that limitation. (ECF No. 12 at 18.) However, plaintiff fails to cite that testimony or demonstrate how the ALJ's pace limitation is not sufficient based on Dr. Rubin's

testimony. After agreeing that production rate work should be eliminated to avoid stress, Dr. Rubin testified, "I think he would have to be in a situation which allows him some frequent breaks, they would allow him to work at his own pace, but I don't think he could compete with a normal individual working under speed or time limitations." (Tr. 45.) The ALJ applied this testimony to the RFC: "He is able to maintain attention and concentration for two-hour intervals between regularly scheduled breaks and to complete a full time workday and workweek. He can have seldom changes in work routine. He should not do production rate of pace work." (Tr. 19.) Plaintiff, however, without identifying any basis for doing so, translated Dr. Rubin's testimony into a pace that is "half of what's normal" and the vocational expert testified a person with that limitation could not sustain employment. (Tr. 68.) The court concludes the ALJ's interpretation of Dr. Rubin's testimony is reasonable. Even if plaintiff's interpretation of Dr. Rubin's testimony is also reasonable, the court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

The ALJ reasonably included all of the limitations identified by Dr. Rubin in the RFC.[8] (Tr. 18-19, 44-45.) As a result, even if the ALJ's reasons for giving only "some weight" to Dr.

---

[8] Dr. Rubin testified plaintiff would be able to understand, remember and carry out simple, routine, repetitive instructions; it would take him a long time to learn more detailed, complicated tasks; he would be able to maintain attention and concentration on simple, routine, repetitive tasks; he would do much better in a routine situation, relatively isolated where there is little or minimal change; he should avoid stress and eliminate production rate work; he should have frequent breaks; he would be able to engage in occasional, superficial contact with the public; he could have occasional contact with coworkers and supervisors; and he would work best working with things rather than

Rubin's testimony are erroneous, the ultimate outcome of the RFC would be the same and the error would be harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

**5.    Dr. Mee**

Plaintiff's argues the ALJ gave too much weight to the opinion of Dr. Mee, a state reviewing psychologist. (ECF No. 12 at 17.) Dr. Mee reviewed the record in October 2011 and completed an RFC assessment including seven moderate limitations. (Tr. 79-81.) In April 2012, Dr. Reade also reviewed the record and affirmed Dr. Mee's opinion. (Tr. 105-06.) The ALJ gave "significant weight" to both opinions, noting they are consistent with the balance of the medical evidence and plaintiff's daily activities and work activity. (Tr. 25.) The ALJ pointed out that Drs. Mee and Reade reviewed the record and have familiarity with SSA disability program rules.[9] (Tr. 25.)

---

people. (TR. 44-45.) These limitations correspond closely with the ALJ's RFC finding regarding mental limitations:

> He can understand, remember and carry out simple, repetitive tasks and well learned complex repetitive tasks. He is able to maintain attention and concentration for two-hour intervals between regularly scheduled breaks and to complete a full time workday and workweek. He can have seldom changes in work routine. He should not do production rate of pace work. He can have occasional, superficial interactions with the public, coworkers and supervisors. He should deal with things rather than people. He would need additional time (defined as 10 percent or more than the average employee) to adapt to changes in the work routine."

(Tr. 19.)

[9] An acceptable medical source's knowledge of Social Security disability programs and their evidentiary requirements may be considered in evaluating the opinion. 20 C.F.R. § 404.1527.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

1   Plaintiff argues the ALJ's assertion that the opinions are consistent with the medical

2   evidence is erroneous. (ECF No. 12 at 17.) Plaintiff cites the March 2009, December 2009, July

3   2010 and December 2012 opinions of Dr. Dalley and the opinion of Dr. Pollack. (ECF No. 12 at

4   17.) For the reasons discussed throughout this decision, the ALJ's findings regarding those

5   opinions are supported by substantial evidence.

6   Plaintiff asserts Dr. Rubin determined plaintiff has "more" limitations than those found by

7   Dr. Mee and Dr. Reade. (ECF No. 12 at 17.) Plaintiff does not compare the limitations assessed

8   by the doctors, but the court notes that the limitations assessed by Drs. Mee and Reade are included

9   

10  in the RFC[10] as are the limitations assessed by Dr. Rubin, as discussed *supra*. The distinction

11  between assigning "significant weight" to the opinions of Drs. Mee and Reade and "some weight"

12  

13  

14  

15  [10]Drs. Mee and Reade assessed seven moderate limitations and opined that plaintiff is capable of

16  recalling and completing simple, routine tasks and likely some more well learned complex, routine

17  tasks as his confidence improves; concentration, persistence and pace appear to be enough to

18  complete a normal full-time day and normal work week with little or no required supervision; and

19  would likely do better with superficial social contacts with the general public and others. (Tr. 79-

20  80, 105-06.) The RFC either matches or is more restrictive for each of these limitations:

21  

22  He can understand, remember and carry out simple, repetitive tasks and well
    learned complex repetitive tasks. He is able to maintain attention and concentration
23  for two-hour intervals between regularly scheduled breaks and to complete a full
    time workday and workweek. He can have seldom changes in work routine. He
24  should not do production rate of pace work. He can have occasional, superficial
    interactions with the public, coworkers and supervisors. He should deal with things
25  rather than people. He would need additional time (defined as 10 percent or more
    than the average employee) to adapt to changes in the work routine."
26  

27  (Tr. 19.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

to Dr. Rubin's opinion is moot since the limitations identified by each of the psychologists were reasonably incorporated in the residual functional capacity finding.

Lastly, plaintiff asserts the ALJ "cannot have it both ways" with regard to giving weight to state consulting psychologists who are familiar with the disability program (Drs. Mee and Reade) while rejecting psychological opinions based in part on the difference in rules in state agency programs (Mr. Shearer, Dr. Dalley). (ECF No. 12 at 17.) Plaintiff is correct that the ALJ should be consistent in reasoning when weighing medical opinion evidence. Furthermore, as discussed *supra*, the ALJ improperly considered unspecified differences in rules in rejecting some of the opinion evidence. However, plaintiff incorrectly assumes the ALJ referenced the same sets of rules for the various medical opinions. Mr. Shearer and Dr. Dalley completed DSHS evaluation forms for eligibility for state disability programs. Drs. Mee and Reade are consulting psychologists familiar with the social security disability program rules. Notwithstanding, the ALJ's findings regarding the opinions of Drs. Mee and Reade and Mr. Shearer and Dr. Dalley were reasonable and supported by the evidence.

### 6.    Dr. Shanks

Plaintiff argues the ALJ's reasons for rejecting Dr. Shanks' opinion regarding plaintiff's physical limitations were improper. (ECF No. 12 at 18.) In June 2012, Dr. Shanks, an orthopedist, examined plaintiff and completed a DSHS functional assessment and narrative report. (Tr. 343—47.) He diagnosed degenerative disc disease of the lumbar spine from L3-4 through L5-S1 and opined plaintiff "is not likely employable at this time in view of his low back and right lower extremity symptoms." (Tr. 347) Dr. Shanks assessed functional limitations of lifting a maximum of 10 pounds and frequent lift or carry of two pounds. (Tr. 343.) The ALJ gave little weight to Dr. Shanks' opinion for several reasons.

1    The first reason cited by the ALJ in rejecting Dr. Shanks' opinion is the opinion is internally

2   inconsistent. (Tr. 25.) A medical opinion may be rejected by the ALJ if it contains inconsistencies.

3   *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). The ALJ noted a number

4   of Dr. Shanks' findings, including normal posture, mild right limp, tenderness to palpation in the

5   lower lumbar area; tenderness along the musculature in the lumbar area; tenderness in the right

6   sciatic notch; some decreased ROM in the back; no specific muscle weakness in lower extremities;

7   some give-way on the right side; intact sensation in the lower extremities; and diagnostic imaging

8   of the lumbar spine showing some disc protrusion with mild foraminal narrowing. (Tr. 20, 346-

9   47.) However, the ALJ rejected the limitations assessed by Dr. Shanks based on these findings.

10   (Tr. 25.) Although the ALJ could perhaps have explained the analysis of inconsistent evidence

11   more explicitly, it is reasonable to infer from the ALJ's discussion of the evidence that the ALJ

12   determined there is an inconsistency between Dr. Shanks' relatively mild findings and the fairly

13   restrictive functional limitations assessed. The court may make inferences from the ALJ's

14   discussion of the evidence, if the inferences are there to be drawn. *Magallanes v. Bowen*, 881 F.2d

15   747, 755 (9th Cir. 1989). The ALJ's findings are reasonably specific and this is a legitimate reason

16   supported by substantial evidence for rejecting Dr. Shanks' opinion.

17    The second reason given by the ALJ for rejecting Dr. Shanks' opinion is that the opinion

18   was generated 11 years after the alleged onset date "with no attempt to relate it back to that date."

19   (Tr. 25.) This is not a specific, legitimate reason for rejecting the opinion. Dr. Shank's opinion is

20   evidence from the period relevant to plaintiff's claim. There is no requirement that an opinion

21   relate back to the onset date, and the medical evidence regarding plaintiff's back complaints began

22   in September 2011. (Tr. 308-13.) Plaintiff testified his lower back pain started when he fell down

23   a flight of stairs in 2010. (Tr. 52.) The ALJ found plaintiff has a severe impairment of degenerative

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24

disc disease of the lumbar spine (Tr. 16) and therefore Dr. Shank's 2012 opinion is relevant to the analysis of that impairment.[11]

The third reason indicated by the ALJ for rejecting Dr. Shanks' opinion is "the DSHS limitation factors." (Tr. 25.) The ALJ's reasoning is vague and it is not clear that Dr. Shanks' opinion is impacted by any rule differences between Social Security Administration rules and DSHS rules.[12] As discussed *supra*, this is not a specific, legitimate reason for rejecting Dr. Shanks' opinion.

### 7.    Dr. Young

Plaintiff argues the ALJ erred by failing to take into account limitations assessed by Dr. Young in the residual functional capacity finding. (ECF No. 12 at 19-20.) Dr. Young completed a physical evaluation and functional assessment in September 2011. (Tr. 308-12.) He diagnosed low

---

[11] Had the ALJ determined plaintiff's mental health impairments were not disabling but his back impairment was disabling, it may have been necessary for the ALJ to discuss an appropriate onset date. Since the ALJ found plaintiff not disabled, onset date is not an issue. In either case, it is not appropriate to reject Dr. Shanks' opinion for not relating to the alleged onset date.

[12] As discussed in note 3 *supra*, case law suggests the impact of differences in the actual effect of differences between DSHS and social security rules on a particular opinion should be considered when this reason is cited for giving less weight to an opinion. The DSHS form completed by Dr. Shanks defines "frequently" for lift or carry and "occasional" for push or pull similarly to the definitions in S.S.R. 83-10. There are no other definitions on the form and no obvious distinctions between the disability considerations are evident. Thus, there is not substantial evidence that any rule differences impacted Dr. Shanks' opinion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 25

back pain secondary to a fall without any radiological findings and with complaints of pain, noted to be basically muscle spasm; anxiety; and history of migraines, unsubstantiated by medical records. (Tr. 311.) The functional assessment indicated maximum standing and walking capacity of six hours in an eight-hour workday with frequent breaks because of back pain and decreased range of motion; no limitation on sitting; maximum lifting and carrying capacity of 50 pounds occasionally and 25 pounds frequently because of back pain; and no limitations on postural activities; no limitation on manipulative activities.[13] (Tr. 311-12.) The ALJ gave some weight to the opinion because Dr. Young examined plaintiff and the opinion is consistent with clinical findings. (Tr. 24.) "However, the balance of the medical evidence supports greater limitations." (Tr. 24.) As a result, the limitations assessed by Dr. Young or greater limitations should have been included in the RFC.

Plaintiff argues the ALJ did not include Dr. Young's finding that plaintiff needed "frequent breaks" in order to stand and walk six hours in an eight-hour workday. (ECF No. 12 at 19.) Plaintiff points out S.S.R. 83-10 defines "frequently" to mean between one-third and two-thirds of the day and therefore asserts plaintiff would require 160-320 minutes of rest per day. (ECF No. 12 at 19.) The ruling provides:

> 'Frequent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

---

[13] Dr. Young indicated no limitations on the right side for manipulative activities but noted on the right side "there is some incoordination and a positive Tinel which may be either a radicular problem or related to carpel [sic] tunnel like syndrome."(Tr. 311-12.) However, Dr. Young did not assess any manipulative limitation attributable to these findings.

S.S.R. 83-10 at *6.[14] There is no evidence that Dr. Young intended to use the term "frequent" as a term of art defined in a social security ruling for a residual functional capacity determination.[15] Dr. Young's findings would have no meaning if they were interpreted to mean plaintiff could stand and walk up to three-quarters of a workday, but must also rest up to two-thirds of a workday. Additionally, there is no indication that Dr. Young intended that plaintiff must "rest" frequently; he opined that plaintiff needed frequent breaks from standing and walking. (Tr. 311.) It is reasonable to conclude that a break from standing and walking could involve sitting, which Dr. Young indicated is not limited. (Tr. 311.) The most reasonable interpretation of Dr. Young's opinion is to read the plain language and conclude that the "frequent" breaks from standing and walking could be satisfied by intermittent sitting. As defendant points out, the ALJ imposed additional limitations on the RFC by finding plaintiff can work "for two-hour intervals with regularly scheduled breaks" and limited plaintiff to light work rather than medium work as was

---

[14]Social Security Rulings are issued to clarify the Commissioner's regulations and policy. They are not published in the federal register and do not have the force of law. However, under the case law, deference is to be given to the Commissioner's interpretation of the Regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 n.2 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991).

[15] Even if Dr. Young intended to use residual functional capacity language, the ALJ is responsible for determining the RFC. *See Rounds v. Comm'r Soc. Sec. Admin.*, 795 F.3d 1177, 1185-86 (9th Cir. 2015); *Stubbs–Danielson v. Astrue,* 539 F.3d 1169, 1174 (9th Cir. 2008); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

indicated by Dr. Young's opinion.[16] (ECF No. 14 at 18.) As a result, there is no error by the ALJ

in applying Dr. Young's credited opinion to the RFC.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision

is supported by substantial evidence and is not based on error.

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment **(ECF No. 14)** is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment **(ECF No. 12)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for

plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED February 19, 2015


 *s/Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge

------------------------

[16]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of

objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this

category when it requires a good deal of walking or standing, or when it involves sitting most of

the time with some pushing and pulling of arm or leg controls. To be considered capable of

performing a full or wide range of light work, you must have the ability to do substantially all of

these activities. Medium work involves lifting no more than 50 pounds at a time with frequent

lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(b),(c),

416.967(b),(c).